UNITED STATES DISRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CLARENCE B. BYNUM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MVM, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 04-0259 |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for summary judgment. The plaintiff, Clarence Bynum, alleges that he was fired from his job as a Court Security Officer ("CSO") at the Superior Court of the District of Columbia in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.* Defendant moves for summary judgment. The Court concludes that there are genuine issues of material fact in dispute and that the defendant therefore is not entitled to judgment as a matter of law.

I. BACKGROUND

Defendant MVM, Inc. ("MVM") contracted with the United States Marshals Service in 2001 to provide Court Security Officers for the Superior Court of the District of Columbia. See Ex. 1 to Defendant's Motion for Summary Judgment ("MSJ"), U.S. Marshals Service Contract MS-02-D-0002 ("MVM Contract"). The contract clearly sets forth the qualifying requirements for CSOs, including medical standards with respect to vision, hearing,

the cardiovascular system, the respiratory system, genitourinary system disorders, the nervous system and the endocrine system. See id. § C-8(e). The contract requires that each CSO undergo and pass a medical examination to establish his or her medical qualifications. See id. § C-8(a). The contract further states that failure to satisfy any one of the required medical qualifications disqualifies the prospective CSO from performing under the contract. See id. § C-8(e).

In March 2002, plaintiff applied for a CSO position at Superior Court. See Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment ("Supp. Opp'n") at 1. Plaintiff underwent a medical examination by Dr. Phong Nguyen, a physician chosen to conduct pre-employment medical examinations for MVM. See Ex. 1 to Supp. Opp'n, Declaration of Clarence Bynum ("Bynum Decl.") ¶ 4. In September 2002, upon the completion of the medical examinations and an interview with the Marshals Service, MVM hired plaintiff as a CSO. See id. ¶¶ 5-6.[1]

After the plaintiff started work as a CSO, the defendant requested more medical information from the plaintiff. See Bynum Decl. ¶ 8. In response, plaintiff's treating physician, Dr. Melissa Turner, forwarded plaintiff's medical records to MVM for review. See Ex. 2 to MSJ, July 13, 2003 Letter from Melissa Turner, Physician, Dep't of Veterans Affairs. The materials released by Dr. Turner discussed plaintiff's medical conditions, including diabetes, hypertension and coronary artery disease. See id. The letter noted that "[n]either his diabetes not his hypertension are adequately controlled," and that plaintiff "remains at increased risk for cardiac, cerebral and renal ischemic disease." Id.

---

[1] The parties disagree as to the terms under which plaintiff was hired. MVM contends that he was hired on an interim basis, pending the results of further medical inquiry. See Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ¶ 5. Plaintiff, however, claims that he was hired on a permanent basis. See Bynum Decl. ¶ 6.

MVM then transferred plaintiff's medical records to Dr. L. Chelton, a United States Public Health Service medical officer.  Dr. Chelton found that the plaintiff suffered from a number of medical conditions, and concluded that these conditions "pose a significant risk to the health and safety of [plaintiff] and others in the essential performance of the job."  Ex. 5 to MSJ, Judicial Security Division, August 13, 2003 Medical Review Form.  The defendant alleges that based on Dr. Chelton's assessment, Marc Farmer, Chief of Judicial Protective Services, determined that the plaintiff did not meet the medical standards and functional requirements of the CSO position, and that he therefore was medically disqualified from the position.  See Ex. 3 to MSJ, Aug. 29, 2003 Letter from Marc Farmer to John Kraus.  The U.S. Marshals Service informed MVM of Mr. Farmer's decision.  See Ex. 4 to MSJ,  Sept. 5, 2003 Letter from Sheryl Pierce to Joseph Morway.  On September 8, 2003, MVM terminated the plaintiff from his CSO position at the Superior Court.  See Bynum Decl. ¶ 9.

## II. DISCUSSION

*A. Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits or declarations show that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  A fact is "material" if a dispute over it might "affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed,

and all justifiable inferences are to be drawn in his favor." Id. at 255; see also Washington Post Co. v. Dep't of Health and Human Servs., 865 F. 2d 320, 325 (D.C. Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in his favor. Laningham v. U.S. Navy, 813 F. 2d 1236, 1242 (D.C. Cir. 1987). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.

*B. The Americans with Disabilities Act*

Under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., it is unlawful for a covered entity to "discriminate against a qualified individual with a disability because of the disability of such individual" with respect to any "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." See 42 U.S.C. § 12111(8); see also Sutton v. United Airlines, Inc., 527 U.S. 471, 478 (1999).

The Court analyzes disparate treatment claims under the ADA using the familiar Title VII burden-shifting analysis set forth in McDonnell Douglas Corp., v. Green. See Duncan v. Washington Metro. Area Transit Auth., 240 F.3d 1110, 1114 (D.C. Cir. 2001); Swanks v. Washington Metro. Area Transit Auth., 179 F.3d 929, 934 (D.C. Cir. 1999). To establish a

*prima facie* case of discrimination under the ADA, the plaintiff must show that: (1) he had a disability within the meaning of the ADA, (2) he is qualified for the position with or without reasonable accommodation, and (3) due to his disability, he suffered an adverse employment action.  See Duncan v. Washington Metro. Area Transit Auth., 240 F.3d at 1114; Swanks v. Washington Metro. Area Transit Auth., 179 F.3d at 934.²

The Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9)(B).  See also Gaskins v. Runyon, 921 F. Supp. 779, 781 (D.D.C. 1994). "Major life activities" are illustrated by the regulations as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii); see also 29 C.F.R. § 1630.2(i).³  To establish that he is a disabled person within the meaning of and protected under the ADA, a plaintiff must present evidence of either: (1) a physical or mental impairment substantially limiting a major life activity of the individual; (2) a record of such impairment; or (3) being regarded as having such impairment.  See 42 U.S.C. § 12102(2). MVM does not contest that Mr. Bynum has a disability as defined by the ADA.

In the second step for establishing a *prima facie* case of discrimination, the plaintiff must demonstrate that he is able to perform the essential functions of the job, with or without reasonable accommodation.  Whether an individual is "qualified" for a job may at times present a pure question of law that may be resolved by the court as a matter of law, but it may

---

²     Plaintiff must show that he suffered an adverse employment action because of his disability.  This fact is not in dispute.  The parties agree that the plaintiff was removed from his position as a CSO because of his medical conditions.

³     In quoting this definition of "major life activities" the Supreme Court stated that "[b]ecause both parties accept these regulations as valid, and determining their validity is not necessary to decide this case, we have no occasion to consider what deference they are due, if any." Sutton v. United Air Lines, 527 U.S. at 481.

also be a question of fact that must be resolved by a factfinder at trial.  See Swanks v. Washington Metro. Area Transit Auth., 179 F.3d at 934.

In determining the "essential functions" of a job, the ADA directs that consideration should be given to the employer's description of the essential job functions: "[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); see also Dorchy v. Washington Metro. Area Transit Auth., 45 F. Supp. 2d 5, 11 (D.D.C. 1999).  The contract between the U.S. Marshals Service and MVM contains a written description of the CSO position and the essential functions of the job.  See MVM Contract.

MVM alleges that the decision to terminate plaintiff was motivated by the determination that he was not medically qualified to perform the functions of a CSO and also on the belief that he posed a direct threat to himself or others.  See MSJ ¶¶ 11, 14.  MVM cites to Dr. Chelton's review of plaintiff's medical history and his conclusion that plaintiff's medical condition posed a significant threat to the health and safety of himself and others in the performance of his essential job functions.  See Ex. 5 to MSJ, Judicial Security Division, August 13, 2003 Medical Review Form.  The ADA does not prohibit employers from establishing qualification standards for hiring employees.  Section 12113 states:

> It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

42 U.S.C. § 12113(a).  The ADA also recognizes that a qualification standard "may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."  42 U.S.C. § 12113(b).

The plaintiff offered evidence to support the contention that he was able to perform the essential functions of the job as described within the contract.  First, plaintiff's weekend supervisor, D. K. Harrod, commended the plaintiff and several other CSOs for the excellent work they performed.  See Ex. 5 to Supp. Opp'n, Letter from Darryl K. Harrod to Lois Epps.  Second, Lois Epps, a site supervisor for the defendant, testified at deposition that she reviewed plaintiff's work and found it to be satisfactory.  See Deposition of Lois Epps ("Epps Depo.") at 30: 16-17; 49: 7-8.  Finally, union representative and fellow CSO John D. Perkins observed plaintiff's performance on the job several days a week, and found him "alert and able to perform his duties."  See Ex. 12 to Supp. Opp'n, Declaration of John D. Perkins ("Perkins Decl.") ¶ 3.  There does not appear to be any evidence in the record that the plaintiff's disability interfered with his performance of the essential functions of the CSO position.  Nowhere does the defendant allege incidents where the plaintiff failed to perform his duties adequately, or where the plaintiff's disability interfered with his work responsibilities.  Thus, the plaintiff has offered sufficient evidence to create a genuine issue of material fact regarding his ability to perform the essential functions of the CSO position.  As a result, the Court concludes that the defendant is not entitled to judgment as a matter of law with respect to the ADA claim.

*B. Title VII of the Civil Rights Act*

Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000(e) et seq., prohibits discrimination by employers on the basis of race.  To survive a motion for summary judgment on a Title VII employment discrimination claim, a plaintiff must first introduce evidence to support

a *prima facie* case of discrimination. See, e.g., George v. Leavitt, 407 F.3d 405, 412 (D.C. Cir. 2005); Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002).  A plaintiff who makes out a *prima facie* case of discrimination establishes a presumption of discrimination, and shifts the burden to the employer-defendant to produce evidence that the challenged action was taken for a legitimate, nondiscriminatory reason.  See Holcomb v. Powell, 433 F.3d 889, 896 (D.C. Cir. 2006).  Once a defendant has done so, the presumption of discrimination "simply drops out of the picture," and "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Id. at 896-97 (quoting Burke v. Gould, 286 F.3d 513, 520 (D.C. Cir. 2002) and Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)).  "All of the evidence" may include (1) evidence establishing the plaintiff's *prima facie* case; (2) evidence attacking the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.  See Holcomb v. Powell, 433 F.3d at 897.

   A plaintiff "makes out a *prima facie* case of disparate-treatment discrimination by establishing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Mastro v. Potomac Elec. Power Co. 447 F.3d 843, 850-51 (D.C. Cir. 2006) (quoting George v. Leavitt, 407 F.3d at 412 (D.C. Cir. 2005) (quoting Stella v. Mineta, 284 F.3d at 145)) (internal quotation marks omitted).  A plaintiff may satisfy the third prong of this test by demonstrating that he was treated differently from similarly-situated employees who are not part of the protected class, or, in the specific context of a discharge claim, showing that he was not terminated for the two common legitimate reasons for discharge: performance below the employer's legitimate

8

expectations or the elimination of the plaintiff's position altogether.  Mastro v. Potomac Elec. Power Co. 447 F.3d at 850-51 (citing Holbrook v. Reno, 196 F.3d 255, 261 (D.C. Cir. 1999)).

The plaintiff in this case satisfies the first prong of this test; he is African-American.  It is also undisputed that the plaintiff suffered an adverse employment action, as he was terminated from being a CSO at the Superior Court in September 2003.  The plaintiff has introduced evidence that he was treated differently from similarly-situated employees. Plaintiff alleges that at least one white CSO has diabetes and was not terminated from MVM.  See Perkins Decl. ¶ 6.  Plaintiff also submits evidence that in the relevant time period several African-American employees – and no white employees – were terminated due to medical conditions.  See Epps Depo. at 49: 10-21.  Plaintiff has satisfied the third prong and has made out a *prima facie* case.

The defendant has offered a non-discriminatory reason for the challenged action – that the plaintiff failed to meet the medical qualifications for the job.  Whether plaintiff was or was not qualified for the job due to his medical condition is a disputed issue of material fact, however, as discussed *supra*.  Therefore, as with plaintiff's ADA claim, there are genuine issues of material fact in dispute with respect to plaintiff's Title VII claim, and defendant is not entitled to judgment as a matter of law.  There is a also a genuine disputed issue of material fact regarding pretext, in that the plaintiff has offered evidence of disparate treatment between himself and a member of a non-protected group.  The Court concludes that defendant's motion for summary judgment must be denied.

III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that defendant's motion [12] for summary judgment is DENIED; and it is

FURTHER ORDERED that a status conference is scheduled for December 13, 2006 at 9:15 a.m. to address the possibility of settlement with the assistance of either the Court's Alternative Dispute Resolution program or a magistrate judge, and pretrial and trial matters.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: November 17, 2006